UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIMBERLY COWART,

    Plaintiff,                                          Civil Action No. 08-14887

v.                                                   HON. PATRICK J. DUGGAN
                                                      U.S. District Judge
                                                      HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL          U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## OPINION AND ORDER

Plaintiff Kimberly Cowart brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for Supplemental Security Income ("SSI") under the Social Security Act. The parties have filed cross-motions for summary judgment. For the reasons discussed below, Plaintiff's Motion for Summary Judgment will be GRANTED, and Defendant's Motion for Summary Judgment will be DENIED.[1]

## I. PROCEDURAL HISTORY

On November 30, 2005, Plaintiff filed an application for SSI, alleging disability as of July 12, 2003 (Tr. 65-67). After the initial denial of her claim, Plaintiff filed a request for an administrative hearing, held on June 4, 2008 in Oak Park, Michigan before Administrative Law Judge ("ALJ") Roger Thomas (Tr. 382). Plaintiff, represented by attorney William Crawforth, testified, as did Ann Tremblay, a Vocational Expert ("VE") (Tr. 387-409, 410-

---

[1] The parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c).

415). On July 11, 2008, ALJ Thomas, denying the claim, found Plaintiff not disabled (Tr. 22). On October 24, 2008, the Appeals Council denied review (Tr. 6-8). Plaintiff filed for judicial review on November 21, 2008.

## II.    BACKGROUND FACTS

Plaintiff, born September 15, 1969, was age 38 when the ALJ issued his decision (Tr. 22, 65). She completed high school, attended cosmetology school, and worked previously as a dental assistant (Tr.73, 80). Plaintiff's application for benefits claims disability as a result of back, leg, neck, and shoulder injuries sustained in a 2003 car accident, and anxiety (Tr. 72).

### A.    Plaintiff's Testimony

Plaintiff testified that in addition to the 2003 accident, she had been in a vehicle collision the month before the hearing (Tr. 387-388). She denied fractures or surgeries as a result of the recent accident, but noted that she continued to take already prescribed pain medication (Tr. 389). Plaintiff, right-handed, reported that she stood 5'8" and weighed 130 pounds (Tr. 391). She stated that she currently lived with her mother (Tr. 391). Plaintiff estimated that prior to the May, 2008 accident, she drove at least once a week (Tr. 391). She testified that after graduating from high school, she received nail technician training, noting that at the time of her training, she was working in a hair salon (Tr. 392). She indicated that she also possessed at least rudimentary computer skills (Tr. 392).

Plaintiff reported smoking a pack of cigarettes every day (Tr. 393). She testified that she took Vicodin regularly for back pain but denied the use of marijuana or street drugs (Tr. 393). Plaintiff alleged that she was unable to walk for more than two blocks due to leg weakness, adding that her mother helped her with some of her personal needs (Tr. 393-394). She reported that she was able to feed herself, but sometimes required help putting on shoes

and socks (Tr. 394-395). She denied performing laundry chores or lifting even one gallon of milk (Tr. 395). Plaintiff reported that Vicodin relieved her pain, but alleged that back discomfort caused sleep disturbances (Tr. 396, 398).

In addition to back and leg pain, Plaintiff alleged "numbness and tingling" radiating from her neck into her left arm (Tr. 398). She indicated that a January, 2004 laminectomy did not relieve her back problems (Tr. 399). Plaintiff testified that she rejected treating source recommendations to undergo additional surgery to remove scar tissue (Tr. 400). She alleged continual back pain of varying degrees (Tr. 401). Plaintiff indicated that Motrin was ineffective (Tr. 401). In addition to her back injury, Plaintiff noted that "a partial tear" of the left shoulder had been deemed "[not] severe enough" for surgery (Tr. 401). She reported that left shoulder pain caused difficulty reaching overhead despite the fact that she performed home exercises (Tr 402).

Plaintiff also alleged continual neck pain, noting that turning sideways increased her discomfort (Tr. 402). She reported that she had been prescribed a cane, but did not use it due to left arm problems (Tr. 403). Plaintiff also indicated that epidural injections were not helpful, adding that her last injection had been more than one year before the hearing (Tr. 405). Plaintiff denied working since November, 2005 (Tr. 405).

In response to questioning by her attorney, Plaintiff reported that she currently received Demerol injections on a monthly basis (Tr. 406). She alleged constant discomfort while sitting, estimating that she could only sit for one hour or "a little bit longer" and stand for 20 minutes depending on how she felt (Tr. 406-407). She characterized a "good" day (allegedly occurring only once a week) as one in which she was able to perform light household chores and that on a "bad" day, she was unable to get out of bed, adding that the majority of days were "bad" (Tr. 407). She testified that her most comfortable position was

reclining with her legs elevated (Tr. 408). She reiterated that she obtained relief from Vicodin, but that the drug made her "foggy" (Tr. 408). In addition to Vicodin, Plaintiff reported that she took Flexeril and Soma (Tr. 409). She opined that her need to recline frequently precluded even sedentary work with a sit/stand option (Tr. 409).

### B. Medical Evidence

#### 1. Treating Sources

A December, 2003 MRI showed "a large herniated disc with a probable extruded fragment" at L5-S1 (Tr. 122). January, 2004 operative reports indicate that Plaintiff underwent a laminotomy for a ruptured disk at L5-S1 (Tr. 116). An MRI taken the following month showed "a very small focal and central disc herniation . . . without encroachment" (Tr. 118). In June, 2004, an MRI showed "no convincing evidence of recurrent disc herniation" (Tr. 119). In June, 2004, Plaintiff reported that she continued to experience back pain "radiating down the left leg" with left toe numbness (Tr. 125). Neurologist Steven R. Cohen, M.D., noting that Plaintiff had stopped working as a dental assistant, observed that she was increasingly depressed (Tr. 125). He opined that Plaintiff had "a persistent [r]adiculopathy because of severe compression of the nerve root, opining that recovery "could take as long as an additional year" (Tr. 126). He also speculated that scar tissue existed in the area of the herniation (Tr. 126). An MRI taken later the same month showed "a small amount of left ventral epidural granulation tissue/fibrosis" (Tr. 127). The following month, Dr. Cohen urged Plaintiff to begin physical therapy, noting that an "epidural steroid injection . . . did not help" (Tr. 124).

In August, 2004, neurologist Boris J. Leheta, M.D. noted Plaintiff's reports of left leg spasms (Tr. 128). Dr. Leheta re-prescribed Flexeril, Klonopin, Vicodin, and Neurontin, recommending physical therapy (Tr. 131). He denied Plaintiff's request for a home aide,

opining that "her condition [was] not severe enough by any means" (Tr. 131). November, 2004 physical therapy notes indicate that while Plaintiff "progressed well . . . she did not show up for therapy to seek secondary measures" (Tr. 132). She was discharged for non-attendance (Tr. 132-133). The following month, an MRI showed "enhancing tissue in the left canal at L5-S-1 in keeping with post-surgical fibrosis," but no evidence of herniation (Tr. 162, 327). Neurologist Narayan P. Verma, M.D. told Plaintiff "that she might have to live with her neurological deficit" (Tr. 156). She was advised "not to lift anything heavy, push, [or] crawl" (Tr. 156). Additional imaging studies performed the same month show results "consistent with a radiculopathy involving the S1 root on the left" (Tr. 220).

Medical records created by Shores Primary Care between April, 2004 and November, 2005 show that Plaintiff complained of continuing back pain and leg numbness (Tr. 190-229). In July, 2005, Plaintiff sought pain control treatment, reporting continued pain, numbness, and spasms despite epidural injections, physical therapy, and the use of a back brace (Tr. 169). William Kole, M.D. recommended epidural steroid injections "with fluoroscopic guidance" as well as "trigger point injections of the left trapezius muscle" (Tr. 171). Dr. Kole advised her to continue to take Vicodin twice daily (Tr. 171). In October, 2005, Jay Kaner, D.O., noting Plaintiff's history of migraines as well as back problems, remarked that epidural injections had been unhelpful (Tr. 185). Plaintiff exhibited problems "walking, bending, and stooping" (Tr. 185). Nerve conduction studies yielded normal results (Tr. 186). Dr. Kaner noted that an electrophysiologic exam "suggest[ed] an S1 radiculopathy on the left," speculating that "[t]here may be a disc fragment still at S1 on the left" (Tr. 186).

In December, 2005, orthopedist Jeffrey Zacharias, M.D. evaluated Plaintiff, noting slight range of motion limitations, but the absence of muscle atrophy (Tr. 306-307). Also in December, 2005, Plaintiff obtained chiropractic treatment for headaches as well as neck,

shoulder, back and leg pain (Tr. 233). Treatment notes from February, 2005 to January, 2006 show that Plaintiff experienced "good relief" from massage therapy (Tr. 239-248).

In January, 2006, Ronald Barnett, D.O. performed EMG testing showing no evidence of denervation (Tr. 257). He noted that Plaintiff appeared depressed and was taking Wellbutrin (Tr. 257, 261). Dr. Barnett recommended increasing physical activities including an aerobic program (Tr. 257). Treating notes from the same month also show that Plaintiff experienced migraine headaches (Tr. 369). Plaintiff indicated that she was not interested in taking either Lyrica or Cymbalta for depression (Tr. 257). The following month, Dr. Barnett, noting that Plaintiff's treatment included "epidural steroid injections, physical therapy, acupuncture, and chiropractic manipulations" without benefit, opined that Plaintiff was unable to perform any work (Tr. 367). An MRI of the cervical spine showed no abnormalities (Tr. 263). In April, 2006, Dr. Barnett completed a "Medical Needs" form on Plaintiff's behalf, stating that she was unable to work at any job (Tr. 370). In September, 2006, Plaintiff received another epidural steroid injection (Tr. 310).

In February, 2007, Dr. Barnett certified that Plaintiff met "the medical criteria" for the use of a cane (Tr. 374). A November, 2008 MRI of the cervical spine showed mild bulging "at the 4th and 5th cervical levels with no encroachment" with otherwise normal results (Tr. 319).

### 2. Consultive and/or Non-examining Sources

In January, 2006, a Physical Residual Functional Capacity Assessment found that Plaintiff could lift 20 pounds occasionally, 10 pounds frequently; sit, stand, or walk for approximately six hours in an eight-hour workday; and push and pull without limitation (Tr. 279). Plaintiff's postural limitations restricted her to *occasional* climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling, with a complete preclusion

on ladder, rope, or scaffold climbing (Tr. 280). The Assessment found the absence of manipulative, visual, communicative, or environmental limitations (Tr. 281-282). A consultation form completed the same day states that "[claimant] is credible, noting a "possible sedentary [Residual Functional Capacity]" (Tr. 286). The same month, a Psychiatric Review Technique concluded that Plaintiff was not psychologically impaired (Tr. 287, 297).

### C. Vocational Expert Testimony

VE Ann Tremblay classified Plaintiff's former work as a dental assistant as skilled at the light exertional level[2] (Tr. 411). The ALJ posed the following hypothetical limitations to the VE, taking into account Plaintiff's age, education (including vocational training as a nail technician) and work background:

> "[L]ower back pain treated first with apparently laminectomy approximately 2003 for a herniation. I believe after a July 12, 2003, motor vehicle accident where she was rear-ended. They had first treatment with injections and physical therapy. And they had a follow up imaging studies for her lower back in 2005 because of continuing symptoms, noting mild degenerative changes at L-5, S-1 without herniation or stenosis there. She has had another find though at 12, page nine, before that one of some post-surgical fibrosis at that level, again without herniation by MRI. Now she's had some other problems. Her left shoulder, there was a partial tear found in 2005. And in her neck some, C-4 and 5 bulges characterized as milk (sic) without encroachment. They did in that same report at 21F, noted the lumbar area, small density at the first sacral nerve. Now let's see, she's had some conditions that are non-severe or acute. There's a note in one report of some anxiety, complaints of diarrhea and vomiting, 22, page 22, a sore throat at 22-16, and some other things like that, bilateral ear pain, 22-25, and so forth. There really hasn't been any strong

---

[2] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

objective evidence of mental impairments in the record. When Social Security looked at this and their view that she was at a light level, though not at the full level. . . . Being on her feet up to six hours out of eight. They modified that indicating that there shouldn't be any use of ladders, ropes or scaffolds. No more than occasional ramps or stairs or occasionally postural motions like balancing, stooping, kneeling, crouching and crawling. If I were to assume those limitations, could a person with those do the past jobs set out in your opinion?"

(Tr. 411-412). The VE responded that the hypothetical individual could perform Plaintiff's past relevant work (Tr. 412).

The VE testified further that if the individual were additionally limited by a second set of hypothetical limitations consisting of "neck rotation . . . [only] about 45 degrees in either direction as a part of a job task" and "simple, unskilled tasks with routine repetitive instructions and tasks," the individual would be unable to perform Plaintiff's past relevant work, but could work as an assembler (1,000 jobs in the regional economy), inspector (700), or counter clerk (inaudible) (Tr. 412).

The ALJ then imposed a third set of hypothetical restrictions imposing a sit/stand option (Tr. 412-413). The VE responded that the assembler and inspector job numbers would remain unchanged, but the counter clerk position would be eliminated (Tr. 413). In response to "a fourth hypothetical" additionally limiting the individual to sedentary work, the VE testified that in the sedentary unskilled category, the jobs of cashier (9,000), information clerk (13,000), and assembler (6,500) existed in the regional economy (Tr. 413). In response to questioning by Plaintiff's attorney, the VE found that if the individual were requiring to lie down at unpredictable intervals during the workday or miss more than one day of work each month, all work would be precluded (Tr. 415). The VE stated that her testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT") (Tr. 413).

    **D.**    **The ALJ's Decision**

Citing Plaintiff's medical records, ALJ Thomas found Plaintiff experienced the severe impairments of "disc bulging at C4-5 with related neck pain, a left shoulder strain with partial tear, degenerative changes at L5-L1 with related lower back pain, and a history of a motor vehicle accident" but that none of the conditions met or medically equaled the listed impairments found in Appendix 1, Subpart P, Regulation No. 4 (Tr. 18-19).

The ALJ found that Plaintiff retained the following residual functional capacity ("RFC") to perform exertionally light work with the following restrictions:

> "she cannot work on ladders, ropes or scaffolds; she can only occasionally climb ramps and stairs; she can only occasionally balance, crouch, stoop, kneel, and crawl; she can perform no neck rotation beyond half way; she is limited to simple, unskilled, routine, repetitive tasks and instructions"

(Tr. 19). The ALJ concluded that although Plaintiff was unable to perform any of her former jobs, she could work as an assembler (9,000 jobs in the regional economy), inspector (4,700), and counter clerk (3,100) (Tr. 21).

The ALJ found Plaintiff's allegations of disability "not credible to the extent they are inconsistent with the residual functional capacity assessment" (Tr. 20). He noted that Plaintiff continued to "prepare simple meals," listen to music, use a computer, play with her dog, and shop (Tr. 20). Apparently making reference to Plaintiff's benefit claims prior to the 2003 car accident (*see* Tr. 55-56) the ALJ noted Plaintiff "had an erratic work history prior to the date she alleges she became disabled," suggesting "that the claimant has stayed out of the work force for reasons unrelated to her alleged disability" (Tr. 20).

### III.   STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV. FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy."

*Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V.    DISCUSSION

Plaintiff faults the ALJ for discounting her allegations of limitation, arguing that his credibility determination was not supported by substantial evidence. *Plaintiff's Brief* at 11-18, *Docket #10.* Citing *Walston v. Gardner,* 381 F2d 580, 585-586 (6th Cir. 1987), she contends that her ability to perform shopping and recreational activities on a limited and sporadic basis does not provide a basis for rejecting her disability claim. *Plaintiff's Brief* at 13-15.   In addition, she argues that her mother's statements in support of the benefits application were rejected on the improper basis that as a family member, she had "incentive" to support the disability claim. *Id.* at 17. Plaintiff also contends that the hypothetical question did not include all of her relevant limitations. *Plaintiff's Brief* at 19-21. Citing *Varley v. Secretary of HHS,* 820 F.2d 777, 779 (6th Cir. 1987), she argues that the ALJ's failure to include her "pain, need to take narcotic pain medications or . . . lie down during the daytime at unpredicted times" invalidates the VE's testimony that she was capable of a range of sedentary work. *Plaintiff's Brief* at 19-20.

Plaintiff's arguments are well-taken, and there are at least three reasons that in combination necessitate that her case be remanded for further consideration.

(1) First, the ALJ's credibility determination appears flawed, particularly with regard to Plaintiff's activities of daily living. The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms. *See Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 853 (6th Cir. 1986). "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.*

Second, SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ must analyze the testimony "based on a consideration of the entire case record." C.F.R. §404.1529(c)(3) lists the factors to be considered in making a credibility determination, including daily activities, "precipitating and aggravating factors," treatment received for relief of symptoms, and additional considerations relevant to functional limitations. 20 C.F.R. § 404.1529(c)(3).

In this case, the ALJ noted that Plaintiff's ability to read the newspaper, use the computer, visit the library multiple times each week, care for her pet, and prepare simple meals stood at odds with her alleged inability to perform unskilled, light work (Tr. 19-20 *citing* 98-104). He also stated, "The claimant is fairly active. Her mother has stated that her daily activities include watching television, reading and sometimes going to medical appointments (Exhibit 3-E, page 1)" (Tr. 20). However, the ALJ appears to overstate Plaintiff's activities of daily living. Exhibit 3-E, a form filled out by Plaintiff's mother, indicates that the Plaintiff needs assistance in putting on socks and shoes, and sometimes in shaving her lower legs (Tr. 83). This corroborates the Plaintiff's own testimony (Tr. 894-95). In terms of caring for pets, the Plaintiff lets the dog in and out, but her parents take care of the dog, feeding and grooming it (Tr. 83). According to the form, Plaintiff's parents do the cleaning and other chores, and while Plaintiff can microwave leftovers, her mother was unsure about other cooking chores (Tr. 84). She said that the Plaintiff, who was a good cook before her injury, prepared meals daily "unless she was in so much pain." *Id*. The Plaintiff herself wrote that in terms of outings to the library or other trips, she required someone to accompany her 'because of narcotic medication and stability" (Tr. 102).

Plaintiff's ability to perform some basic daily functions in spite of pain or medication

level does not translate into the ability to perform substantial gainful activity. In *Walston v. Gardner,* 381 F.2d 580, 586 (6th Cir. 1967), the Sixth Circuit addressed this issue:

> "The fact that appellant can still perform simple functions, such as driving, grocery shopping, dish washing and floor sweeping, does not necessarily indicate that this appellant possesses an ability to engage in substantial gainful activity. Such activity is intermittent and not continuous, and is done in spite of the pain suffered by appellant. *A man is disabled within the meaning of the Act, if he can engage in substantial gainful activity only by enduring great pain.*" (Emphasis added).

Citing *Walston*, the D.C. Circuit in *Fulwood v. Heckler*, 594 F.Supp. 540, 543 (D.C.D.C. 1984), held:

> "Although Plaintiff lives alone, does a minimum of his own shopping and cooking, occasionally drives an automobile, visits relatives, serves as a deacon at his church (a largely ceremonial function) (R. 74-76), and has recently sought work (R. 98), this does not negate his credibility in claiming that he was 'disabled' within the meaning of the Social Security Act. Merely because an individual is somewhat mobile and can perform some simple functions, such as driving, dishwashing, shopping, and sweeping the floor, does not mean that he is able to engage in substantial gainful activity. *Smith v. Califano,* 637 F.2d 968, 971-972 (3d Cir.1981); *Yawitz v. Weinberger,* 498 F.2d 956, 960 (8th Cir.1974); *Walston v. Gardner,* 381 F.2d 580, 586 (6th Cir.1967); *Buzzeo v. Harris,* 486 F.Supp. 690, 693 (S.D.N.Y.1980); *Joki v. Flemming,* 189 F.Supp. 365, 372 (D.Mont.1960). These tasks can be performed intermittently, when the individual is not experiencing severe symptoms, and do not require the sustained effort necessary for any substantial, sustained and regular gainful employment. Mr. Fulwood himself testified that whether he engages in church, family, or social activities depends upon how he feels physically (R. 77, 82). The ALJ's finding that Mr. Fulwood's performance of these activities renders his disability claim not credible is illogical and simply runs counter to common sense under the facts of this case."

Likewise in this case, the ALJ both overstated and gave undue weight to the Plaintiff's activities of daily living in making his credibility determination.

(2) On a related note, the ALJ discounted the statements in support of disability made by the Plaintiff's mother, Ms. Sellers. The ALJ stated, "Additionally, as a relative of the claimant's it is noted that Ms. Sellers has incentive to make statements endorsing her application." (Tr. 20). Other than imputing bias or lack of credibility based on familial

relationship, the ALJ gave no other reasons for questioning Ms. Sellers' credibility. This was error.

> In *Smith v. Heckler,* 735 F.2d 312, 313 (8th Cir.1984), the Court stated:
>
> "Descriptions of friends and family members who were in a position to observe the claimant's symptoms and daily activities have been routinely accepted as competent evidence. *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir.1987); 20 CFR § 404.1529(c)(3). A disregard for such evidence violates the Commissioner's regulations about observations by nonmedical sources as to how an impairment affects a claimant's ability to work. *Id. When an ALJ fails to believe lay testimony about a claimant's allegations of pain or other symptoms, he should discuss the testimony specifically and make explicit credibility determinations."* (Emphasis added).

*See also Smolen v. Chater,* 80 F.3d 1273, 1289 (9th Cir.1996) ("The fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony. To the contrary, testimony from lay witnesses who see the claimant every day is of particular value; such lay witnesses will often be family members." (citation omitted)); *Regennitter v. Comm. of the Social Sec. Admin.,* 166 F.3d 1294, 1298 (9th Cir.1999) (noting claimant's mother's testimony, explaining that such lay testimony "provides an important source of information about a claimant's impairments, and an ALJ can reject it only by giving specific reasons germane to each witness." (citing *Smolen* )).

Ms. Sellers observed Plaintiff on a daily basis, and her remarks support a finding of disability. The ALJ erred in rejecting her credibility without any explanation other than a suggestion that, being Plaintiff's mother, she was biased. If that were the test, then why should the Commissioner even bother to solicit information from relatives?

(3) Finally, there is an unexplained discrepancy between the number of existing jobs testified to by the VE, and the number found by the ALJ in his opinion. The VE testified to potential work as an assembler (1,000 jobs in the regional economy), inspector (700), or counter clerk (inaudible) (Tr. 412). However, the ALJ found that *9,000* assembler jobs

existed in the national economy (increasing the VE's numbers by a factor of 9), and *4,700* inspector jobs (increasing the VE's numbers by a factor of 6.7) (Tr. 21). There is no evidence in this record to support the ALJ's finding as to the number of existing jobs.

To be sure, there is medical evidence in this record that might support a finding of non-disability, depending on a proper credibility determination and an accurate determination of the number of existing jobs. However, in combination, the above three errors cast doubt on the reliability of the ALJ's determination. *See Taylor v. Harris*, 505 F.Supp. 153, 155 (E.D. Tex. 1981)("Although none of the aforementioned errors alone constitutes good cause for remand pursuant to Section 205(g) of the Act, 42 U.S.C. s 405(g), their effect is such that when considered in the aggregate, they demonstrate such cumulative prejudice that a remand is required"). Because there are unresolved factual issues, a remand for an award of benefits is not appropriate at this time. *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171, 176 (6th Cir. 1994). Instead, pursuant to Sentence Four of § 405(g), the case will be remanded for further administrative proceedings.

## VI. CONCLUSION

For these reasons,

IT IS ORDERED that Defendant's Motion for Summary Judgment is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment is GRANTED.

IT IS FURTHER ORDERED that the Commissioner's denial of benefits is REVERSED.

IT IS FURTHER ORDERED that this matter is REMANDED to the Commissioner pursuant to Sentence Four of 42 U.S.C. § 405(g), for proceedings consistent with this Opinion and Order.

A judgment consistent with this Order shall issue.

                                              S/R. Steven Whalen
                                              R. STEVEN WHALEN
                                              UNITED STATES MAGISTRATE JUDGE

Dated: March 30, 2010

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on March 30, 2010.

                                              s/Susan Jefferson
                                              Case Manager